My name is Brian Kane and I am here on behalf of the Attorney General of the State of Idaho, Lawrence Wosden, currently representing Idaho's Secretary of State, Pete Cenarussa, who has since been replaced by Ben Yasursa, and if necessary, I will prepare a motion to that effect for this court. The State of Idaho appears before this court to seek reversal of the District Court's judgment striking down Idaho's geographic distribution requirement related to its direct legislation process by relying solely on Moore v. Ogilvie. The Idaho initiative is a system that's created wholly by the State constitutional process. It's a power that was created by the people and reserved to them, but subject to the conditions and limitations as imposed by the State's legislature. How do you get out from under Moore v. Ogilvie? Pardon me, Your Honor?  Well, Your Honor, I think that Moore v. Ogilvie is a case that can be distinguished easily. First, Moore v. Ogilvie applied a rigid requirement to the counties at issue within that case. A rigid requirement being 200 signatures from those rural counties? Yes, Your Honor. Okay. Well, Your Honor, the State has included in the record and attached to its briefs the requirements as far as the population go, the registered voters in each county for Idaho and the different requirements that will be issued. I'm asking as to Moore, that is to say. You say, well, there could have been 300 voters and you had to get 200. Yeah, there could have been. Was or was not? I don't know the exact limitations, Your Honor, but I think that it's easy to see where 200 as a rigid number applied across the board. 200 sounds like a pretty small number for a county to me. Pardon me, Your Honor? Moore was Illinois, was it? Yes, Your Honor. You think there are counties in Illinois with only 200 or 300 people? Well, it was just an example of how the. What's the population of Illinois? Pardon me, Your Honor? What's the population of Illinois? I do not know, Your Honor. I would assume that it's far greater than that of Idaho, considering. But the people are just as nice or nicer in Idaho. That's right, Your Honor. And they may end up with the same rule as Illinois. Yes, Your Honor. I think the other thing that clearly distinguishes Moore v. Ogilvie is that within Moore v. Ogilvie, we were talking about a third party or candidate access to the ballot versus direct legislation. And I think that there are a number of distinct differences between the two bodies as they apply. For instance, within the third party candidate, they've only got one shot at getting on the ballot. They've only got one shot at participation. Well, they can run the next time, too. That is correct, Your Honor. And in similar terms, those third party candidates are running subject to the requirements and the mandates of the entrenched two-party system. I mean, who sets up the rules for third parties? The Democrats and the Republicans, the two major parties who have been elected. And so they get to control all the reins of access within the third party context. I think there are some differences between the majority parties controlling access to third parties coming in and the question of direct legislation. So I'd like to hear you elaborate on that more. I will, Your Honor. Is there anything specifically that you'd like to hear more about? Just how I mean, this is at the core of what's bothered me about this case on or that I've wondered about. Obviously, more, if it's not distinguishable, is controlling. It's equally obvious that a restriction on third party ballot candidates is a very different thing than some restriction on having a certain amount of interest before you let the let the public legislate directly. And it raises all kinds of issues about, you know, the populist ideas underlying direct direct legislation and the restrictions that have arisen to regulate that. It's just different than, in my mind, than third parties, someone wanting to get on the ballot. They both involve voting, but they're both, you know, in the same, in that sense they're the same, but they're different in substance. And that's what I'm trying to wrestle with is how that difference plays out with whether there's a difference in the standard of review or in the interest of certain. Well, thank you, Your Honor, for clarifying that. And I think that there is a precise difference when we're talking about third party candidates. We're talking about people who, even if elected, are one step removed from the actual lawmaking process. In general, when a candidate is elected, they do not have a direct impact on every citizen in the state. No one candidate can make a law that impacts every citizen in the state. When we pass a direct legislation and initiative, we are creating a law that will impact not just those folks who live in an urban area, not just those folks that live in the rural area, but a law that will immediately and definitively impact every single citizen in the state. That argument seems to me to work for the other side. It means that we ought to be more careful and stricter about seeing that there's not a violation of equal protection. If we follow your argument, there's not just one person who does it indirectly. But this really strikes at the heart of law, as you're telling us. And therefore, if the equal protection requirement applies to the election of one person, it should apply even more, the way you're explaining it, it seems to me, in this case. And I respect your point, Your Honor. But I think that also inherent with that, and I would turn your attention to the Federalist Papers, most specifically Federalist Number 10, where we should defend against our tendency towards the multitude of the majority. Or even as this court recently stated in Federalist Number 78 by Chief Justice Jay, that one of the court's duties is to defend against the tyranny of the majority. And I think that what the Idaho system does is it creates a system whereby every single citizen has a meaningful voice in the process, from the inception of it until the conclusion. I just don't understand that how, saying you have to get X number from each county, where the counties are, some are very small, some are very large, how that gives every citizen the same voice. Well, Your Honor, what it does is it – and perhaps what we need to do is – The problem is I like your arguments. I like the idea that we're protecting people against a majority that ignores other people's rights. I agree with that. I agree with your other argument, too, about how important it is to make sure the initiative process works. I agree with them. The only problem I have is that they both seem to lead to your opponents. Well, and for that matter, Your Honor, maybe we should step back from this process a little bit and think about the initiative and the whole system of the initiative. And what the State argues at this point is that the initiative, the system that's created in Idaho, cannot be struck down simply in naked reliance on Moore v. Ogilvie. But there are a host of cases following Moore v. Ogilvie that create a standard for analyzing whether or not the State's process is unduly burdensome on the rights of those citizens. And I think that when we look at Anderson v. Celebresi, Burdick v. Tkuchy, the Mandel case, and we look at all of those, then we get a test. And within that test, it says first that the plaintiffs have to assert an injury of which the character and magnitude of that injury is assessed by the court. Within this case, we're in an interesting proposition because the plaintiffs have not attempted to circulate any initiative. In fact, if you look at the excerpts of the record, the Secretary of State of Idaho, the now Secretary of State of Idaho submitted an affidavit, and you can find that in excerpts of the record 169 and 173, whereby an initiative circulated in 1996, prior to the creation of this requirement that is now hedged in unduly burdensome terms, actually met the standard. It would have met it in 23 out of 44. The most of the... As a practical matter, I don't think this is all that burdensome. But let me ask you this. I assume, but you can disagree with me if you like, I assume that if there were an Idaho law that required for the passage of a statewide initiative, that it be passed by at least 51% of all of the counties, that that would be unconstitutional under the one-person, one-vote. Absolutely, Your Honor, because then we are burdening the fundamental right to vote. Okay, okay. Now, if that's so, that is to say, if you cannot impose a percentage requirement county by county, how can you, at this lower level of just access to the ballot, impose a percentage requirement county by county, not for all of them, but for a significant number, a large enough number you're necessarily going to include rural counties, for access to the ballot under Moore v. Ogilvie? You see, Moore v. Ogilvie doesn't make it impossible. All you've got to do is do a little more work to get your 200. Here, you've got to go do a little more work out in the counties to get your 6%. Correct, Your Honor. How do you get out from under my example, once you kind of focus on the fact that Moore v. Ogilvie is not premised upon impossibility, but just a little bit more difficult? Well, I think that the way we get by your argument, Your Honor, is the State presents their interests in the ballot. And so the State's interests in regulating this provision of the ballot include, and this is all supported by the record that's before you, ballot efficiency, an informed electorate, protection against localized legislation, guard against the proliferation of ballot initiatives, and ensures the integrity of the process. Yeah, yeah, those are all such general words. I can see that what you really, one of the things that this wants, and I'm sympathetic to this, is that you've got to consult not just Boise, but you've got to consult the rural areas. Now, do you have any rural congressional districts in Idaho? How many representatives are there? There's only two, Your Honor. Is there one that's, I mean, one's obviously going to be Boise. Is the other one, by comparison to Boise, sufficiently rural that it really has a contrasting? Well, and as I outlined in my briefing, Your Honor, Idaho is an unusual predicament because we only have two congressional districts, and necessarily the districts bisect Ada County, which is the most populous county. I see. But I think that, you know, one of the other things that should be in the back of the court's mind is we assess this process, this threshold. Do you have within your state health system rural house districts that are, but of course they've got to be of equal population given the implementation of Edgar v. Carr. Correct, Your Honor, and Idaho does have 35 different districts. So if you were trying to get a system that would ensure meaningful participation from all of the geographic areas, you could require 6 percent of signers from all of your state house districts without biting on this representation problem under Moore v. Ogilvie. It could be done, Your Honor, but I also think that, you know, I think there's a natural tendency when we discuss direct legislation to everybody brings a different idea to the table. And so I think that the Idaho system is fair, and it actually, one of the inherent things within the Idaho system is that it makes it so that no one region or one group of people within the state can dominate the process. I had a question about that. If there was a requirement of just, let's say, 6 percent of the voters for the statewide, I assume that could be met simply by petition signed by people in one county. Correct, Your Honor. What percentage of the voters in the state statewide are in Idaho County? It's a fairly significant percentage. More than 40 percent? I don't think it's more than 40 percent, Your Honor. But I think that also when we start getting into these mathematical equations, we start making a number of different assumptions. And some of the assumptions that we make are, A, you're going to get everybody's signature, and that everybody's signature equates support. And I think that when you talk about making laws that are going to affect every citizen in the state, even if you get 60 percent of the voters out of a four-county area, well, maybe that's a law that better impacts just that four-county area. And there are still mechanisms within Idaho that the initiative process is very open. Every county has the initiative. Every municipality has the initiative. So as far as localized types of legislation, there are ways to make sure that. I've got an idea for you. Abolish the initiative process. That's what you're worried about. I have a different idea. Without doing a lot of independent research, which, of course, I'm happy to do if I need to do it. I'm just curious, like, you know, if the record shows how many states of the union currently have an initiative process. And if there's anything in the record that summarizes the different ways in which the different states regulate the initiative process. Your Honor, I do not think that that information is in the record. I do know that 23 out of the states of the union have the initiative, which. That we can take notice of what the laws are of state. So you're doing 23. Is there is there anything summarized in anything that I can get my hands on quickly in the record that would tell me how those states, how they what kind of rules or statutes they have that restrict access to the ballot for initiatives? I think that there are actually some some Web sites that you can find that will take you right through all of the all of the different requirements. And you have any idea how many states have similar restrictions? There there are several other states that have similar restrictions. I know that Nevada does. Utah. I think Nevada's, if I remember correctly, is 10 out of 17 counties that they require. Utah was recently struck down in reliance primarily on Moore versus Ogilvie. Utah was in your category until you got rid of it. Yes. And I think that the Utah Supreme Court made the same error that the district court did in this case. I think that there's a long line of cases. Geographical distribution requirements since Moore versus Ogilvie have been upheld in the seventh and eighth circuits, which is cited to and referred to on our brief. This isn't just geographical, because you could you have to have what, 20 out of 40 counties, 22 out of 44. And you can get them all in the same area. You can exclude the biggest county. It's geographical would be what Judge Fletcher says. If you had it based on equal counties that were of equal size or on districts that were of equal size, you wouldn't have the problem. But here you can pick the smallest counties. Now, your opponents say it makes it too hard. But I don't know about that. But but you can get your signatures in the smallest counties and have an unrepresentative collection of signatures. Well, I'm not sure because of the dual nature of the requirement. I'm not sure that you can actually meet that burden by getting your signatures and just the smaller counties. What do you mean by dual nature? Well, there's there's the larger six percent requirement. You need six percent of the voters in the last gubernatorial election. Six percent total of total. And then you need six percent from half the county. Right. And so there's this dual requirement set set up to balance. All of the six percent can come from half the counties. It would be difficult to do. Yeah. Difficult. But that's what the law permits. I can see that I'm down to about three minutes. And I'd like to reserve that for rebuttal. Thank you. Is there any case that has upheld this type of restriction based on the precedents that you're relying on? Good morning, Your Honors. Paul Grant. May it please the Court. I represent the affilies in this case, the plaintiffs, including the initiative, a referendum institute. There's a web address I don't have, but it has a lot of the data regarding the restrictions and regulations from various states summarized there. I would also point the Court to the decision of the Utah Supreme Court for a summary of some of the states that have some similar requirements, because I do believe that's reviewed. In the case of Gallivan v. Walker, the Utah Supreme Court decision that was filed in August of 2002, I do believe they review a number of states. And Wyoming is another state that has a county distribution requirement. Your Honors, I think it's important to understand what Utah is doing. It's trying to give a voice to something other than the interest of individual voters. They're trying to give a voice, in fact, to counties in this case or to voters by county. And part of their stated justification is they don't want the rural voters dominated by the urban. Well, clearly that's been a problem, developing problem in state after state, and it's been a problem that's been understood throughout the 20th century and now into the 21st. But the problem is that the people in the rural counties don't have the population is simply smaller. And that's a problem of, if you want to call it a problem, it's a problem of democracy. And we can't do what Idaho wants to do, which Judge Winville recognized, which essentially is give the rural counties a veto power over legislation. In other words, Idaho has to get has to play by a different set of rules in the country at large with the electoral college system. Absolutely true, Your Honor. The electoral college system, the U.S. Senate structure and the ratification of Constitution, federal constitutional amendments are all subject to a compromise that was made in order to put this country together. It's the way the state Senate can't be elected the way the U.S. Senate is. That's correct. I guess that was the whole point of Reynolds versus Sims, which is right or wrong. That's correct. The state simply can't treat voters differently. And I would call the court's attention to just two seminal cases. And then I'd like to talk a little bit about the proper method of analysis of this case, because these are old cases. Gray versus Sanders and also more against Ogilvie. And I'd just like to quote a couple of the, I think, controlling principles that are that are articulated in these cases. And quoting from Gray, quoting the Supreme Court in Gray. And there is no indication in the Constitution that home site or occupation affords a permissible basis for distinguishing between qualified voters within the state. Go on from Gray. But once the class of voters is chosen and their qualifications specified, we see no constitutional way by which equality of voting power may be evaded. And the court refers back to the principles of political equality as initially enunciated in the Declaration of Independence, the Gettysburg Address, etc. And what what Idaho has done is violated these principles. And also they have just another, I think, really helpful quote from Gray. Once the geographical unit, geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote, whatever their race, whatever their sex, whatever their occupation, whatever their income and wherever their home may be in that geographical union. The other point that I think Council made was that this isn't a vote. This is not like other cases in which the court courts have said everyone has to be treated equally. But this is a procedure for getting a measure on the ballot for a vote and that we should have a different rule for that process. The counsel said that you couldn't do this in the election itself, even in an initiative election. Well, let's I'd like to address that, Your Honor. The U.S. Supreme Court in Meyer versus Grant, 1988, equated the speech that's associated with circulating petitions, the advocacy of the measure, the persuasive speech to the citizens. The U.S. Supreme Court analyzed that and said that's core political speech. That speech is the most fundamental speech of all in the United States because it's proposing political change. When Colorado chose to discriminate in the petition circulation process against paid circulators, that was struck down in Grant. And in 1999, the Supreme Court also struck down Colorado's requirement that non-registered voters couldn't circulate petitions. So if we're talking about the petition circulation phase, which we are, we're talking about not the circulator at this point, but the signer, but the principle is still the same. The purpose of the initiative is to propose political change at that point in time. It's not yet submitted to the voters, but it's the voters themselves. And by the way, the only people who can sign a petition in Idaho are registered voters. This is an exercise of the voting franchise. It's one of the bundle of rights, if you will, that a voter and a qualified elector in Idaho has. They have it by virtue of being qualified electors. Those are the only people who can sign petitions. So the notion that it's not voting is true, but it's also part of the exercise of the political franchise for the individual electors. Isn't the question, though, at least as it relates to what the standard of review is, whether it's compelling state interest or some intermediate test, is whether it's a severe infringement of the right to vote? It's a very good question. As opposed to a more modest infringement of the right to vote? That's a very good question, except that I don't believe, although that's said often, I'm not sure it's applied. And I'll give you a couple of examples. Was that standard set often or just once, at least by the Supreme Court? That's where it's normally set. Don't we have to apply that as our standard? I think you can follow the example. I'm not saying it would decide it, but at least as to whether the state has to show a compelling state interest or they have some intermediate standard of balancing important state interests against injury. It seems to me that's the threshold question. Okay, well, let me refer to, again, Buckley v. American Constitutional Law Foundation, 1999. Justice Ginsburg went through the three points that we raised, the Colorado, excuse me, that ACLF raised and won on at the district court, excuse me, at the 10th Circuit. First point was voter registration requirement for petition circulators. They struck it down. Colorado argued, and it's in Justice Ginsburg analysis. Colorado argued that this is not a severe burden, the requirement that circulators be registered voters. They talk about motor voter registration. This was discussed at oral argument. Justice Scalia said, yeah, that's real easy. You can just register to vote when you're getting your car license or doing anything, getting your driver's license. This isn't a really serious burden. And the evidence at trial in that case, which is also referred to in the Supreme Court's analysis, was that there's, I don't know the numbers, but there's, you know, maybe a third of the population, adult population of Colorado is not registered. The rest are. The two-thirds are. And those who aren't, most of them can. One of the plaintiffs in that case, Bill Orr, testified that he chose not to be a registered voter as a political statement, but he still wanted to circulate petitions. So the Supreme Court was asked whether this is a severe burden, the requirement that circulators be registered voters. They didn't actually analyze it on that basis. What they actually did was look at Meyer v. Grant and say, you have shrunk the pool of people available to circulate your petitions. That is a restriction on speech, political speech, just like paid circulators was a restriction, the ban on paid circulators is a restriction. Are those cases where you're talking about the Anderson, the lesser test? The ballot access cases. Are those equal protection cases? The U.S. Supreme Court doesn't like to use equal protection analysis on ballot access. They may not like it, but they still have an equal protection clause. Yes. They do like to use it in election cases. If you remember, that was a remarkable decision. Good for this case only, Bush v. Gore. Yes. They loved it in that case. And all I can tell you is if you look at the Buckley decision, all three issues, they talk about this general, well, it depends on the severity of the burden and depends on the interest of the State and this and that. But in all three issues, they relied upon, Justice Ginsburg's majority opinion relies upon, a previous case precedent. It doesn't answer the question whether this is a severe burden or it isn't a severe burden, but we rely on Meyer v. Grant. And on the identification badge for circulators, we don't say whether that's a severe burden or it isn't. We rely on McIntyre v. Ohio Election Commission. It's a standard they articulated, but they don't always follow it themselves. But they may sometimes require us to follow what they've said, even though they do. And in Bush v. Gore, they apply the precedent of Moore v. Ogilvie. I mean, it's not the sole case on which they rely, but they do rely on it and they do quote it. They have one case to rely on. And the right to vote, quoting from Bush v. Gore, the right to vote is protected in more than the initial allocation of the franchise. The right to vote, according to Bush v. Gore, doesn't even exist unless the State legislature gives it to you. I don't know to what extent the State would be recognized as having a valid government without citizens that have the right to vote. Well, no. In the presidential election, they said there is no right to vote. So the State legislature could vote for you. Yes. I've heard that argument. Yes. That's what they said. I've heard that argument. It's not a question of hearing an argument. That's what the United States five justices. I think that was dicta, Your Honor. It was different? Dicta. No, no. I don't think that was central to their holding, was it? It was what? Central to their holding in the case. Well, we take everything they say very seriously. Yes. Your Honor, I'd like to go back to where I started, which is to say that what Idaho is trying to do is to give geography a vote. They're giving new meaning to the phrase, we want to see grassroots support. They want to give the vote to counties, to geography, rather than people. Would it be constitutional, in your view, if Idaho asked for 6 percent of the electors in State house districts? It's not today's argument, but I understand the court saying where are we going or where might we be going. I know that there are courts – I think there are courts that would say that that's constitutional. I would argue that it isn't, again. Because – see, that makes it quite interesting to me, because my assumption is that on Baker v. Carr, Reynolds v. Sims, Moore v. Ogilvie theory, that you can do that because the house districts are necessarily going to be of equal population, State house districts. Understood. So now I have – So how do you get to your position, then? Thank you for the question, Judge. My position is – Well, they always say what I do. Okay. Sometimes they handle it, sometimes they fumble it. Just wait and see if he says thank you for the answer. Your Honor, what Idaho is saying is that we anticipate that people's voting position on initiatives, their position on the initiatives, will vary based on their geography within the State. Not just whether it's rural or urban, but whether they're in the southwest corner, the northeast corner, or which district they're in. What Idaho is saying is that we want to give weight to regional differences in viewpoint. So what they're saying is that we recognize we, Idaho, we anticipate that the people of our State are going to view things regionally, rather than as a State, as a whole. And I think that principle is something that States – Isn't that why you elect State legislatures by different geographical areas? To give those areas input, to give voice to that. But I don't believe that a State – let's talk about what an initiative is. This is a change of the law for all the people of the State of Idaho. As any statute might be. Yeah. I don't believe that Idaho could require the approval of a certain number of county delegations to the legislature. I believe they can require the approval of a majority of the legislators. But let's say Idaho has 44 counties. I don't think they could say – they could have a secondary requirement, which is 23 of the counties must ratify. Well, let's say 6 percent of the vote in each county. 6 percent? What would be wrong with that? Assuming each county being of equal size. Of vote? On what issue? 6 percent of the people who voted in the last election, 6 percent of the registered – whatever the figure. In each county rather than half the counties? Yes, of each county. Assuming – no, no. Assuming – don't say county, because I'm talking about a unit of equal size. As Ted Fletcher said, the legislative district, which is of equal size. Each legislative district, 6 percent from each district. Well, my answer would be that relying on Gray and relying on more viability, that once you've decided the geographical territory within which a vote is to be taken or a political act is to be allowed and the qualification of the voters has been determined, you can't distinguish between the voters based on where they live within that geographical unit. You can't subdivide it and say that once you've got 6 percent of the signatures from the people in the Boise area, additional signatures are useless. Now you've got to go out to the counties. Well, I have a – and I take it that's thanks for the answer, too. Yeah, that's a thanks for the answer. I have a problem. I haven't thought through it totally, but I'll let you shed light on it. With the idea of saying they could require a certain percentage in congressional districts, but they can't do it by county. And here's what my problem is. I have a general feeling that with congressional districts, you'd have a congressperson. I mean, but you don't have a lot of other officers or politicians or officials that are, like, organized – unless I'm missing something – by district. On the other end, with counties, they have all types of political organs and people elected or responsive to the people. So if you want to let rural – people living in rural areas have a say, they're going to have their best say if you let their counties speak for them. I don't think the U.S. Constitution would let their counties speak for them. Well, it may be that they don't under Wendell v. Sims, but it seems to me it is – I see a problem if you went by congressional districts with who then organizes any kind of political movement in the district. If there's just a representative and they're busy in Washington, D.C. I don't think that congressional districts is the answer. I think that if you've got a statewide issue, all voters have to be treated equally. And if you've got a countywide issue, all voters have to be treated equally. But then if that's true, then you do get – you can't get a tyranny. I mean, in all the western – or many of the western states have this division of half their people are so living in a couple of urban cities and the rest living in very different environments. Yes. And what Idaho is saying – and that's the point I'm trying to emphasize today, Your Honor – what Idaho is saying is that people in rural areas will have a different viewpoint, political viewpoint, based on where they live. And because they do, Idaho wants to give them a voice which is disproportionate to their percentage of the population. So that is viewpoint – They want to give them a disproportionate voice as a screening device. That's viewpoint discrimination. And they would have to have a compelling state interest to do that. And what I suggested, and somewhat facetiously but not entirely in my answer brief, was that Idaho hasn't shown any problem that they're afraid the state's going to fracture and fly apart over these types of differences. That's the justification the country's not going to come together if we don't make certain compromises on these equality principles in the original forming of the nation. But Idaho hasn't made any point that somehow the rural areas are going to secede or threaten to secede or it's causing political strife, that their rights are being overrun. But viewpoint discrimination is not tolerated under the First Amendment. Judge Windmill only reached equal protection under the 14th. But I ask this Court to also consider First Amendment incorporated to the Due Process Clause of the 14th because this is viewpoint discrimination because Idaho does assume these people will have different views based on their geography. They're trying to give geography a vote and a vote or a say in state government. But this is an exercise of the political franchise. Signing a petition for a change in the government is an act of participating in political change. This is the way that Idaho has elected – one of the ways they've elected to self-govern. The people of Idaho cannot assign more weight in any of the political processes to people based on their geography. Your Honor, if they could, there are other issues. Okay, the rural voters feel they're disadvantaged, but they're disadvantaged by numbers as well as their geographical interest. But there are other ways that people are disadvantaged. There are people in racial groups who feel they're disadvantaged. We don't – we couldn't allow Idaho to say 6 percent of the Latino community, 6 percent of the African American community. A pretty small vote. But they couldn't do that. They couldn't do it by occupation. They couldn't limit – we couldn't say we want 6 percent of the non-property owners and 6 percent of the white male property owners. They can't decide to give weight to subunits like that. They have to treat every individual equally. They cannot distinguish – Yeah, but that one pushes it so far. Your argument pushes this to the point where you can't have anybody but at-large representatives in the entire state representing them in the state legislature. Well, I don't think it goes there, but I understand that a legislative district does have a legislative representative. And it's geographically divided. Pardon me? And it's geographically divided, and it goes rural, urban, whatever the district happens to include. And it's considered that those people are best capable of understanding the needs of the local constituency. They'd be most familiar. I don't argue that only at-large representatives are going to take it. Well, unfortunately, before you get pushed to that, I think you've got 30 seconds to sum up. Thank you, Your Honors. I do believe that the standard is – the controlling case is more of a Yogo v. And that is a number case rather than a percentage case, a number of signatures per county rather than the percentage that Idaho does. But I think that is a distinction without a difference, as Judge Windmill found and as the Utah courts found. And if you look at some of the cases where they have upheld county distribution requirements or, excuse me, distribution requirements, some of those election law cases, some of those cases they deal with congressional districts rather than counties. Okay? So they have upheld the notion that you can require where the populations are equal among the units. So those aren't the same. And elections for candidates are not the same thing. In fact, third parties get less respect, I think, than even the initiative process. I've done a lot of third-party litigation over the years. And those cases that say you've got to look at the severity of the burden versus the harm almost always come out like rational basis review. And those people lose, those third parties. They lose those cases except for a rare exception when they apply strict scrutiny. But I think here the controlling precedent is more – and the controlling principle, additional principle is the anti-discrimination principle. One voter cannot be treated differently than another based on where they live. Thank you. Thank you, Kevin. First to respond to Judge Gould's query of me as I sat down, in Massachusetts Public Interest Research Group versus Secretary of the Commonwealth, which is cited heavily within the state's brief, a similar county distribution requirement was upheld. And interestingly, it should be pointed out to the court, the Udall case, which is a summary of affirmance by the United States Supreme Court, upheld a geographic distribution requirement that required signatures of 1 percent from all 11 of the congressional districts, which could result in a far worse anomaly than the Moore versus Ogilvie or even this case. But the congressional districts will have equal populations, won't they? Correct. But it still results in that absurdity if we were to extend it out to the logical extreme of, you know, 90 percent of the voters want a candidate on the ballot who's prohibited because of the conspiracy of one district. But I think that when we look at it in those terms, we have to think, are we looking at this in logical terms based on assumptions of actual voter turnout and actual voter participation, or are we creating barriers to a state-created state process governing strictly state laws that are going to be applied to the citizens of everyone in the state? Well, see, that argument seems to me doesn't go anywhere after Reynolds versus Sims because that's what they were dealing with. State offices created by the state. I mean, they were purely state offices there. And this is purely a state issue. But once again, Your Honor, and I respectfully submit to the Court that it's easy to lump direct legislation in with candidate or third-party access. But I think that there is a profound diversity. There's not nearly as great a danger from a third-party candidate as there is from the initiative process. Right. And so the initiative process requires greater protection. I think that one of the interesting things, I know that Your Honors have been in Seattle for at least the last week. If you've noticed the local Seattle newspaper, there is currently I-831, which is an initiative that has been proposed to label a person in the state of Washington a portion of an animal. I won't go into what that – but a geographic distribution requirement of this type is designed to prevent exactly that type of localized legislation. There are very, very bad laws. I could give you a couple that have been in the news recently. We get them from legislatures. We get them from the initiative process. I don't think we can really take that into account. I understand that. But as far as looking at whether or not the state has a legitimate interest in putting forth reasons and whether those reasons are supported, I think that it goes to that nature of the argument. And what the state has done is said, this is our threshold, just to get it on the ballot. And once it's on the ballot, it's a simple majority. There's no veto. There's no other mechanism there to block the initiative. It's just a reasonable check and balance on the power of the majority. I can see that I'm out of time, Your Honor, but I would respectfully submit that in analyzing the geographic distribution requirement that Idaho has submitted, that the entire initiative process should be analyzed as outlined by the cases following Moore v. Ogilvie. Thank you. Thank you very much. Thank you both very much. It's been an enjoyable argument, interesting issue. And the case just argued will be taken under submission. The courts will stand in recess for the day. All rise. This court for this session is adjourned.
judges: Reinhardt, W Fletcher, Gould